UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PHILLIP TERRY, | ) | Case No.: 1:09 CV 2432 |
| Plaintiff | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| CENTRAL TRANSPORT, INC., *et al.*, | ) | |
| Defendants | ) | <u>ORDER</u> |

Currently pending in the above-captioned case is Defendants' Central Transport, Inc. ("Central Transport"), Casey Bellman ("Bellman"), and Christopher Dye's ("Dye") (collectively, "Defendants") Joint Motion for Summary Judgment (ECF No. 37). For the reasons stated herein, the court hereby grants Defendants' Motion.

## I. FACTS AND PROCEDURAL HISTORY

Central Transport is a less than a truckload ("LTL") trucking company. Using the LTL model, different kinds of freight for a variety of customers are loaded onto a single truck that travels along a route or to a destination where the customers are located. (Cummings Decl. ¶ 2, ECF No. 37-8.) Central Transport operates a trucking terminal, which is essentially a very large loading dock in Cleveland, Ohio. (*Id*. at ¶ 3.) At this location, Central Transport's dockworkers and drivers load, unload, and transfer freight between long-distance and local route trucks. (*Id*. at ¶ 3-4.)

Plaintiff Phillip Terry ("Terry" or "Plaintiff") had been employed in the trucking business throughout his life. (Pl.'s Opp. to Def.'s Mot. for Summ. J. at 7, ECF No. 40.) He applied for

employment with Central Transport in July of 2007. (Cen. Tran. Driver App. at 1, ECF No. 37-5.) At the time Plaintiff submitted his application to Central Transport, he was already employed by another trucking company, Inland Waters. Plaintiff had worked for Inland Waters since 2005, and previously from 2001 to 2003. (Terry Aff.¶ 2, ECF No. 40-1.) After submitting his resume in response to an online job posting, Plaintiff was contacted by Defendant Bellman, Central Transport's Regional Employee Relations Manager. (*Id.* at ¶ 4.) Bellman called Plaintiff and expressed interest in Plaintiff's resume and the possibility of employing Plaintiff as a dock worker/city driver at Central Transport's Cleveland facility. (Terry Dep. at 98, ECF No. 37-2.) Bellman subsequently contacted Plaintiff a number of times to obtain additional information to support Plaintiff's application, and Plaintiff eventually met with Bellman in person and filled out an application, which Plaintiff signed on July 18, 2007. (*Id.* at 98-100; Cen. Tran. Driver App. at 1,5, ECF No. 37-5.)

Plaintiff and Bellman spoke on at least six or seven occasions, between the time when Bellman first contacted Plaintiff, and when Plaintiff was eventually hired by Central Transport. (Terry Dep. at 96, ECF No. 372.) On these occasions, Plaintiff and Bellman completed additional paperwork and discussed the available position, wages, benefits, and vacation time. Plaintiff and Bellman also discussed a few particulars regarding the job, including the fact that Plaintiff would need to work on the dock for several months before taking on driving responsibilities; a probationary period; and the employees with whom Plaintiff would be training. (*Id.* at 101-104.)

After Plaintiff completed the application, he underwent a post-offer, pre-employment physical in accordance with Central Transport's company policy regarding its driver/dock worker employees. (Med. Exam. Report at 1-3, ECF No. 37-3; Cummings Decl. ¶ 4, ECF No. 37-8.) Plaintiff's physical was conducted on July 24, 2007, and included a form to be filled out by the

Plaintiff regarding medical history and personal information. (Med. Exam. Report at 1, ECF No. 37-3.) On that form, Plaintiff indicated that he suffered from cervical radiculopathy beginning in 2005, and that he had been taking Vicodin for the pain during off-work hours. However, Plaintiff stated that his condition was causing him "no problems currently." (*Id.*; Terry Dep. at 72, ECF No. 37-2.) Plaintiff passed his physical and began work for Defendants on August 13, 2007. (Terry Aff. ¶ 8, ECF No. 40-1.)

On August 15, 2007, two days after Plaintiff began working for Defendants, Plaintiff quit his job at Inland Waters. (Compl. ¶ 16, ECF No. 1-1.) On September 5, 2007, Plaintiff faxed a form from his treating physician, Dr. John Schnell, to Bellman, listing several temporary work restrictions to be in place for eight weeks. The restrictions pertained to the frequency with which Plaintiff could lift various weights, as well as perform bending and twisting motions. (Terry Phys. Report of Work Ability, ECF No. 37-6.) In September of 2007, a few weeks after Plaintiff had begun working for Defendants, Bellman and Dye met with Plaintiff to discuss his condition, and Plaintiff contends they proceeded to terminate him. (Terry Aff. ¶ 14-16, ECF No. 40-1; Cummings Aff. ¶ 4, ECF No. 37-9.)

On September 4, 2009, Plaintiff filed his Complaint in the Cuyahoga County Common Pleas Court against Defendants, alleging the following counts: (1) disability discrimination under Ohio Revised Code §§ 4112.02 and 4112.99; (2)wrongful discharge in violation of Ohio's public policy; and (3) promissory estoppel. (Compl., ECF No. 1-1.) On October 19, 2009, Defendants removed the case to this court. (Notice of Removal, ECF No. 1.) On September 15, 2010, Defendants filed a Joint Motion for Summary Judgment. (ECF No. 37.)

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides that:

-3-

> A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. . . .

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id*.

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id*. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### III. LAW AND ANALYSIS

**A. Whether Plaintiff's Claims are Barred By a Contractual Limitation Period?**

1. Limitation Period Is Reasonable

Plaintiff alleges that Defendants terminated him based upon his disability or perceived disability, or because they regarded him as disabled, and that this conduct was discriminatory in violation of Ohio Revised Code §§ 4112.02(A) and 4112.99. (Compl. at ¶ 26, 33.) Plaintiff's employment application contained a waiver modifying the applicable statutes of limitations for any

claims brought based on his employment with Defendants. Defendants maintain that Plaintiff's claim is barred by this clause. Plaintiff argues this waiver is invalid.

The application for employment with Defendants, signed by Plaintiff on July, 18, 2007, contained a waiver, just above the signature line, on the final page of the application. It reads, in pertinent part:

> I agree that any action or suit against the Company arising out of my employment or termination of employment including, but not limited to, claims under state or federal civil rights statutes must be brought within the applicable statute of limitations, or six months of the event giving rise to the claims, whichever period is shorter, or forever be barred. . . . This Waiver shall be governed by and construed in accordance with the laws (and not the law of conflict) of the State of Michigan.

(Cen. Tran. Driver App. at 5, ECF No. 37-5.) Plaintiff was terminated on or about September 5, 2007. (Terry Aff. ¶ 14-16, ECF No. 40-1; Cummings Aff. ¶ 4, ECF No. 37-9.) Plaintiff's action was commenced on September 4, 2009, nearly two years after the event giving rise to the claims. Therefore, his action was commenced well outside the six-month period specified in the waiver. Thus, the court must determine whether to apply the contractual limitation period or the statutory period governing his claims.

Plaintiff asserts that the contractual limitation regarding the statute of limitations contained within the employment application is invalid based on the Sixth Circuit's ruling in *Alonso v. Huron Valley Ambulance Inc.*, 375 F. App'x 487 (6th Cir. 2010). Plaintiff argues that the *Alonso* court "specifically found invalid a statute of limitations whenever it was contained in an employment application." (Pl.'s Opp. to Def.'s Mot. for Summ. J. at 31.) While the court in *Alonso* did find a waiver of the statute of limitations contained in an employment application to be invalid, Plaintiff is incorrect in asserting that the court declared all such clauses invalid. In *Alonso*, the plaintiffs

signed two waivers: one which waived their right to sue in court, and one which shortened the applicable statute of limitations to six months. 375 F. App'x at 492. The court conducted an analysis of whether the plaintiffs knowingly and intelligently waived their right to sue in court. *Id*. Upon finding that the plaintiffs did not knowingly and intelligently execute their waivers, the court concluded,

> [b]ecause we have already found that the [plaintiffs] did not knowingly, intelligently, and voluntarily sign the waivers included in their employment applications due to the fact that they were not given any information regarding the Grievance Review Board procedures, we hold that their statute of limitations waivers were, likewise, invalid.

*Id*. at 494. The court did not find the statute of limitations to be invalid merely because it was contained in an employment agreement. Indeed, courts have held that terms in employment applications may constitute part of the employee's and employer's contract of employment. *See, e.g.*, *Timko v. Oakwood Custom Coating, Inc.*, 625 N.W.2d 101 (Mich. Ct. App. 2001); *Butzer v. Camelot Hall Convalescent Ctr., Inc.*, 454 N.W.2d 122 (Mich. Ct. App. 1989). As the court stated in *Oswald v. BAE Indus., Inc.*, No. 10-CV-12660-DT, 2010 WL 3907119, at *2 (E.D. Mich, September 30, 2010),

> in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period shall itself be a reasonable period.

(quoting *Order of United Commercial Travelers of Am. v. Wolfe*, 331 US 586, (1947)).

Defendants argue that the contractual limitation in Plaintiff's employment application contains a Michigan choice of law provision, and that, under Michigan law, courts have held that a six-month limitations period is reasonable. *See Timko*, 625 N.W.2d at 103-06. In *Timko*, the court found that

the defendant was entitled to summary judgment on the plaintiff's age discrimination claim where the plaintiff had assented to a 180-day period of limitation regarding employment claims, and had commenced his action thirteen months after being terminated. *Id.* at 107. The court found the limitation period to be reasonable, noting, "[b]oth Michigan law and federal law provide for six-month or even shorter periods of limitation in the context of various employment actions. Furthermore, both Michigan and federal law apply six-month periods of limitation even where an employee's civil rights are involved." *Id.* at 105-06. The *Timko* court determined that a shortened limitation period is reasonable if: (1) the claimant has had sufficient opportunity to investigate and file the action; (2) the time is not so short as to work as a practical abrogation of the right of action; and (3) the action is not barred before the loss or damage can be ascertained. *Id.* at 104. In the present case, Plaintiff has presented no evidence that he lacked sufficient opportunity to investigate and file the action, nor that the damage in this case could not have been ascertained within six months of his termination. Further, Plaintiff has not argued, nor presented the court with any evidence that the limitation period in question was somehow a practical abrogation of plaintiff's right of action. Simply put, there is nothing inherently unreasonable about a six-month limitation period, and Plaintiff has made no showing as to why it might have been specifically unreasonable in the present case.

Despite the Michigan choice of law provision contained in the waiver, Plaintiff asserts that no Ohio court has ever held that it is legal to unilaterally change an employment statute of limitation based upon a provision contained in an employment application. Though the court questions the relevance of this assertion, the court notes that federal courts applying Ohio law, have done so. *See, e.g.*, *Hoskins v. DaimlerChrysler Corp.*, No. 3:03CV338, 2005 WL 5588084, at *4 (S.D. Ohio, Mar. 30, 2005); *Sanders v. DaimlerChrysler Corp.*, No. 3:05 CV 7056, 2008 U.S. Dist. LEXIS 84348, at

*15-16 (N.D. Ohio Nov. 9, 2006). Further, such findings by courts applying both Michigan and Ohio law are consistent with the Sixth Circuit's holding that six-month contractual limitation periods contained in employment applications are not inherently unreasonable. *Thurman v. DaimlerChrysler, Inc.*, 397 F.3d 352 (6th Cir. 2004).

In addition, Plaintiff has pointed to no controlling statute which limits the ability of the parties in this case to contract for a shorter limitations period. Therefore, the court finds that there is no genuine dispute regarding whether the limitations period was reasonable.

## 2. Knowing and Voluntary Waiver

Plaintiff may be able to escape application of the shortened statute of limitation period if his waiver to the statutory limitation period was not knowing and voluntary. The court in *Oswald* held that the plaintiff's claim against his employer for discrimination based on the plaintiff's military service was barred by a six-month limitation period contained in his employment application, but noted that "the Sixth Circuit has also stated that 'waivers in civil rights cases ought to be carefully scrutinized for voluntariness.'"*Oswald*, 2010 WL 3907119 at *2-3, n.2 (quoting *Myers v. Western-Southern Life Ins. Co.*, 849 F.2d 259, 262 (6th Cir. 1988)). The Sixth Circuit has enumerated the factors to be considered when determining whether a plaintiff has knowingly and voluntarily waived the right to bring a suit in court: (1) the plaintiff's experience, background and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the plaintiff had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; and (5) the totality of the circumstances. *Walker v. Ryan's Family Steak Houses Inc.*, 400 F.3d 370, 381 (6th Cir. 2005).

Plaintiff contends that the typeface of the waiver is minuscule and hardly legible. (Pl.'s Opp. to Def.'s Mot. for Summ. J. at 31, ECF No. 40.) However, the record evidence directly contradicts this contention. The font used in the waiver is clearly legible from a normal reading distance, and the language is relatively plain and clear. Further, the text's legibility does not appear to have prevented Plaintiff from understanding or completing other portions of the application in which the same typeface appears in questions or next to blanks. (Cen. Tran. Driver App. at 1-5, ECF No. 37-5.)

Plaintiff also asserts that he did not understand the full meaning of the waiver and did not have an opportunity to consult with a lawyer about its meaning. (Pl.'s Opp. to Def.'s Mot. for Summ. J. at 31, ECF No. 40.) However, Plaintiff stated that he never read the contractual provisions before signing them, despite being given the opportunity to review them and ask questions. (Terry Dep. 108-112, ECF No. 37-2.) Further, Plaintiff stated that the document was familiar to him, in that it was "pretty much the same" as other DOT applications he had completed throughout his career. (*Id.* at 109-110.) Plaintiff's case is analogous to that of the plaintiff in *Moore v. Ferrellgas, Inc.*, 533 F. Supp. 2d 740, 749 (W.D. Mich. 2008), where the court found that there was a knowing and voluntary waiver where the plaintiff did not have a high school education, did not ask for more time to complete the application or to consult an attorney, or indicate in any fashion that he did not understand the terms. Here, Plaintiff similarly does not have a high school education, did not ask for more time to complete the application or to consult an attorney, or indicate in any fashion that he did not understand the terms.

Defendants also provided Plaintiff with consideration for the waiver. Defendants provided Plaintiff with wages and employment. *Timko*, 625 N.W.2d at 106 (citing RESTATEMENT CONTRACTS, 2d, § 71, pg. 172 ("consideration may constitute a return promise or a performance, including an act,

-10-

a forbearance, or 'the creation, modification, or destruction of a legal relation'")). Therefore, Plaintiff is unable to claim that Defendants had no obligation in exchange for the limitation on his right to sue.

After a review of these factors and the totality of the circumstances, the court finds Plaintiff made a knowing and voluntary waiver to the statutory limitation period. Furthermore, Defendants correctly note that "[o]ne who signs a contract cannot seek to avoid it on the basis that he did not read it or that he supposed it was different in its terms." *Mannix v. County of Monroe*, 348 F.3d 526, 533 (6th Cir. 2003) (internal citation omitted). It has also been established that an employee who does not understand an application "had an obligation to seek assistance before she signed if she felt she did not understand the application." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 461 (6th Cir. 1986). In the present case, Plaintiff neither read the terms of the waiver, nor did he ask any questions regarding them, despite having the opportunity. Under such circumstances, the court finds that there is no genuine dispute of material fact regarding the validity of the waiver or whether Plaintiff commenced this action within six months of his termination. Therefore, judgment is hereby rendered as a matter of law in favor of Defendants on Count 1, Plaintiff's disability discrimination claim.

### B. Plaintiff's Public Policy Claim

Plaintiff has voluntarily decided to no longer pursue Count 2 of his claim, which alleged that Defendants' actions were "contrary to statute and public policy, and constitute a breach of Plaintiff's right under Ohio law." (Compl. ¶ 35; Pl.'s Opp. to Def.'s Mot. for Summ. J. at 11, ECF No. 40.) Therefore, this claim is hereby dismissed with prejudice.

### C. Plaintiff's Promissory Estoppel Claim

Plaintiff avers that he reasonably relied on Defendant Bellman's alleged promise of secure long-term employment in making his decision to leave his employment at Inland Waters and begin

work for Defendants. (Terry Aff. ¶ 6, ECF No. 40-1.) Plaintiff asserts that "if this court was to determine that the application is a contract which would preclude the claims, [Plaintiff's] claim for promissory estoppel is quasi contractual and thus be outside of any contractual waiver." (Pl.'s Opp. to Def.'s Mot. for Summ. J. at 31.) Plaintiff's assertion is not well-taken. The court has found the waiver to be valid and enforceable. The waiver states that "any suit arising out of [Plaintiff's] employment or termination of employment" is subject to the six-month limitation, which is measured from the event giving rise to the claims. (Cen. Tran. Driver App. at 5, ECF No. 37-5.) Plaintiff signed a valid and enforceable waiver applying to any suit arising out of his employment or termination of employment, including his quasi-contractual claim for promissory estoppel.

A promissory estoppel theory allows for recovery only when no contract exists, or where a party refutes the existence of a contract. *Advance Plastics Corp. v. White Consol. Indus. Inc.*, 828 F. Supp. 484, 491 (E.D. Mich 1993); *see also Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F. 3d 174, 181 (6th Cir. 1996) ("Where the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel[.]") In the present case, the court has found the waiver contained in Plaintiff's employment application to be valid and enforceable, and that waiver pertains to "any action or suit against the Company arising out of my employment or termination of employment ." It is irrefutable that plaintiff's promissory estoppel claim arises out of his termination by Defendants, just as it is irrefutable that plaintiff commenced his action well outside the six-month limit. Thus, the court finds that there is no genuine dispute regarding the facts surrounding whether Plaintiff is bound by the six-month limitations period in his employment contract, and that his action was not commenced within six months. Therefore, judgment should be entered as a matter of law in favor of Defendants on Count 3, Plaintiff's promissory estoppel claim.

## IV. CONCLUSION

For the foregoing reasons, the court hereby grants Defendants' Joint Motion for Summary Judgment (ECF No. 37).

IT IS SO ORDERED.

>/s/ *SOLOMON OLIVER, JR.*
>CHIEF JUDGE
>UNITED STATES DISTRICT COURT

July 29, 2011